## STATE v. GERALD N. DAHLGREN.

107 N. W. (2d) 299.

January 20, 1961—No. 38,212.

*Gerald N. Dahlgren,* pro se, for relator.

KNUTSON, JUSTICE.

Defendant was convicted on April 25, 1960, of the crime of burglary in the third degree. Hennepin County has a public defender appointed pursuant to Minn. St. 611.12, who represented defendant throughout the trial. On defendant's application, we issued a writ of error on August 15, 1960. Alleging that he is an indigent person, he now petitions this court for appointment of an attorney to assist him in preparing briefs and record on his review.

We have been supplied with a complete transcript of the proceedings at the trial, including the testimony of all witnesses. On his petition for a writ of error, defendant alleges:

"(A)   Judge Larson prejudiced the jury by mentioning my prior convictions during the prosecutors opening remarks. I was not informed of my right to request a new jury at this time, nor at anytime later in the trial.

"(B)   Mr. Meshbesher [Assistant County Attorney], impeached a witness, Mr. John Sainta Maria, by claiming surprise! This was in reference to an answer received while examining Mr. Sta. Maria. This answer exonerated me of the crime. The witness had answered the question once before under oath. The question was asked by a member of the District Attorneys staff, and at least two members of the District Attorneys staff were present and so had previous knowledge of his intended testimony.

"(C)   After surprise was claimed, the prosecutor introduced as evidence, or at least read a statement made by Mr. Sta. Maria, under duress. The statement implicated me. Mr. Sta. Maria, claims he was given no rest, and awakened several times for questioning. Having had no sleep for three days he willingly answered anything they asked him to make them leave him alone.

"(D)   Duane Erickson [a witness for the state], was coached on the time elements involved, as can be proved by examining the preliminary hearing transcript, and trial transcript. He admitted to a friend of mine, Carl Markuson, this was true.

"(E)   Lastly, I claim I was tried not only for the burglary of McBeaths Grocery, but Morrie and Tubbys Grocery as well. As the prosecutor used witnesses from both crimes as well as the investigating officers.

"(F)   I have ten (10) new witnesses. My attorney had only two days to prepare my case, so was able to call only one witness. The new witnesses are Skeeter Kendrick, Holly and Richard Spencer, Sheila Fisher, James Keenan, Carl Markuson, Robert Lettierre, John Sta. Maria, David Bjork and myself."

We have carefully examined the entire transcript of the trial. The

conviction is based for the most part on circumstantial evidence. Proof of guilt was not strong. At the close of the state's case, the trial court, in denying a motion for dismissal, said: "It seems to me to be a close proposition here, but I will deny the motion." The jury was out for nearly 24 hours before arriving at a verdict. The principal claim of error relates to the purported impeachment of one of the state's witnesses, who had signed a written statement prior to the trial. Before calling this witness, the attorney for the state was advised by defendant's counsel that the witness would repudiate such statement. A motion to suppress the statement had been made prior to trial. The witness had also stated to a probation officer and another member of the prosecutor's office that his written statement was not true. In spite of all this information, which the prosecuting attorney and the trial court had, the state was permitted to call the witness and question him regarding the presence of defendant at the crime. After testimony that defendant was not present, the prosecuting attorney claimed surprise and was permitted to impeach his witness by reading the prior alleged inconsistent statement.

It is settled law in this state that the state may impeach its own witness in case of a genuine surprise. The rules pertaining to such impeachment are adequately stated in State v. Saporen, 205 Minn. 358, 285 N. W. 898, and need not be repeated here. However, before such witness may be impeached, a genuine surprise must exist.[1] The state should not be permitted to present to the jury hearsay evidence under a subterfuge of surprise.[2]

It is obvious from a reading of the transcript in this case that the prosecutor felt that he had a weak case which needed to be bolstered up by the prior hearsay statements of the witness called. The practice of calling a witness who the prosecutor knows will not testify according to a prior written statement, so that he can introduce hearsay statements under the guise of impeachment, is indefensible. The instructions of the court that such hearsay statements may be used only for impeach-

---

[1]State v. Lemke, 207 Minn. 35, 290 N. W. 307.
[2]State v. Gulbrandsen, 238 Minn. 508, 57 N. W. (2d) 419; State v. Guy, 259 Minn. 67, 105 N. W. (2d) 892.

ment do not erase from the minds of the jury the information which they have so obtained. In a close case, it may well be enough to swing the case in favor of the state. The transcript before us has not been submitted as a settled case; we do not have a bill of exceptions; nor do we believe that a motion has yet been made to the trial court for a new trial. At least, no record of it appears before us. It now appears that when and if the matter reaches us on a proper record we will be compelled to grant a new trial because of the above and other errors. We remand the case to the trial court to take such corrective action as it deems advisable, not inconsistent with this opinion. We trust that the public defender will continue to represent defendant, at least until the matter can be presented to the trial court.

In order to facilitate the disposition of applications to this court for appointment or payment of counsel for an indigent defendant on appeal from a criminal conviction and in order to secure a uniform practice throughout the state, we deem it appropriate to specify in detail the principles and policies which we believe should control these cases and the procedure which will be followed in such matters by this court and which should be followed by all trial courts.

Prior to Griffin v. Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. ed. 891, 55 A. L. R. (2d) 1055, we held that the United States Constitution does not require the state to provide the expenses of an appeal for an indigent prisoner in a criminal case and that our state constitution and statutes neither compel nor authorize such procedure. State v. Lorenz, 235 Minn. 221, 50 N. W. (2d) 270. Similarly, in State ex rel. Koalska v. Rigg, 246 Minn. 234, 74 N. W. (2d) 661, we held that the United States Constitution does not require a state to provide a transcript of the trial proceeding to an indigent prisoner for use on an appeal. Many cases of similar import from other jurisdictions could be found.[3] The Griffin case held that, under the Federal Constitution, Federal and state governments may withhold completely the right to appellate review in criminal cases but that, if such appellate review is made generally available, withholding from indigent per-

_____

[3]See, Annotations, 100 A. L. R. 321 and 55 A. L. R. (2d) 1072, and supplemental decisions.

sons who have been convicted of crime the appellate review afforded persons able to pay the expense thereof was a denial of due process and equal protection.[4] That this case and those following it have given rise to many difficulties in this and other courts is evident from numerous applications by indigent persons reaching appellate courts since it was decided.[5]

A right of appeal in criminal cases is provided in this state under Minn. St. 632.01, which reads:

"Criminal cases may be removed by the defendant to the supreme court, by appeal or writ of error, at any time within six months after judgment, or after the decision of a motion denying a new trial; but, if the order denying a new trial be affirmed upon hearing upon the merits, no appeal shall be allowed from the judgment."

The right of review by the supreme court expires at the expiration of 6 months after judgment or after a decision denying a motion for a new trial. Obviously, this limitation of time has application to all persons convicted of a crime, whether indigent or not.

In an obvious effort to comply with the Griffin decision, § 611.07 was amended. by L. 1957, c. 498, to include the following provision for furnishing a transcript to such indigent defendant under certain conditions:

---

[4]In Eskridge v. Washington State Board, 357 U. S. 214, 78 S. Ct. 1061, 2 L. ed. (2d) 1269, the United States Supreme Court, following the Griffin case, held that it was a denial of due process and equal protection to deny defendant's application for a transcript. The court said (357 U. S. 216, 78 S. Ct. 1062, 2 L. ed. [2d] 1271):

"* * * We do not hold that a State must furnish a transcript in every case involving an indigent defendant. But here, as in the Griffin case, we do hold that, '[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.' "

In Burns v. Ohio, 360 U. S. 252, 79 S. Ct. 1164, 3 L. ed. (2d) 1209, the court held that it was a denial of due process and equal protection to deprive defendant a right of review for failure to pay a filing fee. See, also, Douglas v. Green, 363 U. S. 192, 80 S. Ct. 1048, 4 L. ed. (2d) 1142.

[5]See, Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L. Rev. 1, 16.

"Subd. 3. When a defendant convicted of a felony or a gross misdemeanor has appealed to the supreme court or has procured a writ of error, or who has otherwise brought the validity of his conviction before the supreme court for review, applies to the district court and makes an adequate showing that because of his poverty he is unable to pay for a transcript which he reasonably needs in presenting the alleged errors raised for appellate review, the district court shall, at the expense of the county in which the defendant was convicted, order a transcript, or a part or an abridgment of the transcript, or a bill of exceptions, as the case may be and as shall be necessary for a proper presentation of defendant's cause for appellate review, unless it shall appear that his cause upon review may properly be presented on the judgment roll referred to in section 632.04, or on the synopsis of the testimony prepared pursuant to section 640.10, or on any other abridgment or report of testimony made available by law, or on any combination of such available reports or records."

This statutory provision was construed in State v. James, 252 Minn. 243, 89 N. W. (2d) 904, certiorari denied, 358 U. S. 934, 79 S. Ct. 322, 3 L. ed. (2d) 306, where we held that a complete transcript of the entire trial need not be provided in all cases and that some showing of the need for a transcript must be made before the trial court would be compelled to order the delivery of an entire transcript to a convicted person under the Griffin decision. In the James case we said (252 Minn. 245, 89 N. W. [2d] 906):

"* * * While an indigent prisoner should be furnished such part of the transcript as is necessary to adequately present the questions which he in good faith wishes to have us review, the expense of a complete transcript should not be imposed upon the counties of this state where it is not necessary in order to present such questions. The proper procedure ought to be that a defendant who wishes a review by this court should, in his application to the trial court, indicate what questions he wishes to have us review and what part of the transcript is necessary in order to present such questions. If he raises a question as to the sufficiency of the evidence to sustain the conviction, it should be

incumbent upon him to point out in what respect he believes the evidence is lacking."

State v. James, *supra,* has been followed in State v. Johnson, 255 Minn. 173, 96 N. W. (2d) 389; State v. Johnson, 256 Minn. 337, 98 N. W. (2d) 145; State ex rel. Elkins v. County of Ramsey, 257 Minn. 21, 99 N. W. (2d) 895.

The case now before us raises the question whether counsel must be appointed to aid an indigent convicted person in presenting an appeal to this court and, if so, under what conditions. The only statutory provision dealing with this subject in this state is § 611.07, subd. 2, which reads as follows:

"If counsel so appointed[6] shall appeal or procure a writ of error, and after the hearing of the appeal or writ of error the supreme court shall determine that defendant is unable, by reason of poverty, to pay counsel, and that review was sought in good faith and upon reasonable grounds, such counsel may be paid such sum for his services and expenses therein as the supreme court shall determine, to be certified to the county treasurer by the clerk of the supreme court. In any case such compensation and expense shall be paid by the county in which the defendant was accused."

While the courts may have inherent power to appoint counsel to represent an indigent person on appeal, we have no power to appropriate money to compensate such counsel. Only the legislature can do that. The only statutory provision for such compensation is that found in § 611.07, subd. 2.

It seems obvious to us that a difference does exist between the constitutional and statutory right and requirement to provide assistance of counsel during all the stages of a trial and the right to such assistance in presenting an appeal from a conviction. A person charged with the commission of a crime by indictment or information has no choice but to stand trial. There is little room for argument that throughout such trial he is constitutionally entitled to the advice and assistance of counsel, nor is there any difficulty in enacting statutes requiring the

---

[6]Refers to § 611.07, subd. 1, dealing with appointment of counsel upon the trial.

courts to provide such assistance. Section 611.07, subd. 1, was amended by L. 1959, c. 383, so as to provide for counsel even before a preliminary hearing and it now reads:

"When a defendant shall be charged upon indictment or information or complaint for any felony or gross misdemeanor and shall request the magistrate to have counsel appointed to assist in his defense, and satisfied such magistrate by his own oath or other required proof that he is unable, by reason of poverty, to procure counsel, the county attorney shall immediately certify to the judge of the district court of the county wherein the preliminary examination is had that the defendant is without counsel and that he has sworn, under oath, that he is financially unable to procure counsel. The district court shall then appoint counsel, not exceeding two, for such defendant, prior to his preliminary examination by a magistrate, to be paid, upon his order, by the county in which the indictment was found, or complaint issued or information filed. If no counsel is appointed prior to the preliminary hearing the court shall appoint such counsel, not exceeding two, at any time thereafter when the defendant is without counsel and has sworn under oath that by reason of poverty he is unable to afford counsel. Compensation, not exceeding $25 per day for each counsel for the number of days he is actually employed in the preparation of the case, and not exceeding $50 per day for each day in court, together with all necessary and reasonable costs and expenses incurred or paid in said defense, shall be fixed by the court in each case."

Where the defendant has been tried and convicted, however, difficulty does exist in determining how far courts must go in foisting the expense of an appeal upon the public, whether the appeal is meritorious or not. At this stage of the proceeding the choice lies entirely with the convicted person, not the prosecuting authorities, as to whether or not to seek a review. It seems that some method must be found to avoid denying a convicted indigent person the right of review in a meritorious case, where probability of prejudicial error exists, and also to avoid saddling the public with the expenses of a review where the defendant has had a fair trial and no possibility of a reversal on review exists. It is in this area that the courts, including ours, are find-

ing much difficulty. No one desires to deprive an indigent person the right of review in a meritorious case simply because he is unable to pay the expenses. On the other hand, no justification exists for affording him a right of review simply because he does not have to bear the expenses of it in a case where there is no merit to the appeal. When a person convicted of a crime is able to pay his own way, the expense of appeal provides some restraint against seeking a review in a case that has no merit, but where the public is asked to bear the burden of such appeal no such restraint exists. If the public is to be required to bear such expenses and to furnish an indigent convicted person not only with a transcript of the trial but counsel to assist in preparing and presenting an appeal and all other expenses incident thereto, simply for the asking, it is safe to say that the time is not far distant when every indigent person convicted of a crime will appeal, whether there is any merit to it or not, simply because he has everything to gain and nothing to lose, and because in many cases he may thus be able to delay the final enforcement of the judgment. If this comes to pass, it not only will cause an unjustifiable raid on the public funds but also will add immeasurably to the congestion of court calendars, which in many cases are already overburdened. It is apparent, therefore, that some way must be found to permit review of a meritorious case without subjecting the court and the public to the expense and inconvenience of a complete review of a case when nothing can be accomplished thereby.

Under § 640.10, upon a conviction by trial or by plea of guilty and sentence to the state prison or reformatory, the court is required to furnish as part of the commitment record such synopsis of the testimony as it deems important. We believe that, in all cases where a person is convicted of a felony or gross misdemeanor punishable by incarceration in the state prison or reformatory, the trial court should require the preparation of such synopsis in sufficient detail so that we may adequately determine whether there is any justification for granting a motion of such defendant for the appointment of counsel on appeal or the furnishing of a more complete transcript. Such synopsis should contain:

(1) A record of everything said at the time of arraignment.

(2) A narrative statement prepared by the court reporter of the testimony of each witness who appeared at the trial. This need not be long but should succinctly state what the testimony of the witness was.

(3) If there is any argument, ruling, or contention concerning the admission or rejection of any item of evidence, such should be set forth in full.

(4) All motions made at the completion of the trial, including motions for new trial; the rulings thereon; the court's memorandum thereon; and all motions for full or partial transcript or for the appointment of counsel after trial, and the court's reasons for denying the same, should be set forth in full.[7]

(5) If objection is made to the argument of the prosecuting attorney, such objections and the portions of the argument to which objection is made, if it is reported by the court reporter, should be set forth in full.

(6) All instructions requested by defendant which are denied should be set forth in full.

(7) The statute now requires the inclusion of the instructions of the court, which should be made part of this synopsis, and if the jury comes in for additional instructions after originally retiring the jury's requests and any further instructions given should be set forth in full.

(8) A record of the statements and questions propounded at the time defendant is sentenced, together with the remarks of the trial court, should be included with the synopsis.

(9) Whenever a defendant is charged with the commission of prior felonies under § 610.31, a complete transcript of the proceedings thereon, showing compliance with the statutory requirements, should be furnished.[8]

---

[7]Some of these requirements are included in the files or judgment roll, but, to facilitate any investigation by this court of the justification for granting a motion to appoint counsel or to require the furnishing of a more complete transcript where it has been denied by the trial court, we deem it advisable that they be included in the synopsis furnished to us by such applicant.

[8]See, State ex rel. Savage v. Rigg, 250 Minn. 370, 84 N. W. (2d) 640, certiorari denied, 355 U. S. 918, 78 S. Ct. 348, 2 L. ed. (2d) 277.

(10)  If the attorney appointed to represent the defendant upon the trial requests to be relieved, his requests, with the reasons therefor and the action taken by the trial court thereon, should be included as part of the report so made.

Upon an appeal from such conviction, an indigent defendant, upon demand, should be furnished a copy by the county of such synopsis, including the instructions of the court to the jury, and other parts of the judgment roll which are a matter of record. If he then deems a more complete transcript necessary in order to present his appeal, he should point out to the trial court, upon application, what he wishes to raise on appeal and why he deems a more complete transcript necessary. The trial court should then determine whether an entire transcript or a more detailed part of the transcript is necessary in order to present such questions as the defendant wishes to raise. If the defendant then claims that the trial court has denied his application unjustifiably, he may apply to this court, stating specifically what he requires and why he requires it, based upon a review of the questions which he wishes to present. This procedure complies substantially with what we said in State v. James, *supra.* In applying to this court, the defendant should submit the synopsis of the testimony so furnished by the trial court and a copy of the judgment roll, together with his application setting forth the questions he wishes to review and the reason he needs a more detailed transcript. We will then make an independent examination of the record so provided and determine whether there is any merit to the appeal and whether the questions which the defendant wishes to raise can be determined from the record already furnished.

The same is true with respect to applications for assistance by counsel in presenting such appeal.

Substantially this procedure has been adopted by the State of California. In a declaration of policy, the California court, in People v. Hyde, 51 Cal. (2d) 152, 154, 331 P. (2d) 42, 43, said:[9]

---

[9]This case was followed in People v. Gillette, 171 Cal. App. (2d) 497, 341 P. (2d) 398. In this case the form of order used by a California court in denying an application may be found.

"It is our opinion that appellate courts, upon application of an indigent defendant who has been convicted of a crime, should either (1) appoint an attorney to represent him on appeal or (2) make an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. This investigation should be made solely by the justices of the appellate courts. After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court."

As we have heretofore stated, the only statutory provision we have dealing with the appointment of counsel to assist a convicted indigent person in presenting an appeal to this court is § 611.07, subd. 2, which is quoted above. This statutory provision contemplates payment of the expenses of an attorney representing an indigent prisoner only in cases where the attorney has been appointed to assist defendant in the trial court according to the procedure provided in the preceding subdivision of the same section. State v. Coursolle, 255 Minn. 384, 390, 97 N. W. (2d) 472, 477. While this statute may be inadequate to permit the trial court or this court to compensate counsel appointed to represent a convicted indigent person upon an appeal, we think that it may be said that it is the duty of an attorney appointed to defend such person on the trial to continue such representation after conviction if he conscientiously believes that the defendant has not had a fair trial. The attorney having accepted appointment as defendant's counsel, the same relationship of attorney and client exists as in any case of private employment. Such attorney owes his client the same duty of fidelity as any other attorney. That is true whether the appointed attorney is a public defender or a private attorney. If he conscientiously believes that nothing can be accomplished by a review, he should so advise his client and ask the trial court that he be relieved of further duties. If, however, he believes that the defendant has been deprived of a fair trial and a reasonable basis exists upon which there may be a reversal, he should proceed with the appeal. If, upon such

appeal, we are satisfied that the review was sought in good faith and upon reasonable grounds, we are then authorized, under § 611.07, subd. 2, to order payment for the services of the attorney and the expenses of the appeal. While we realize that compensation of counsel appointed to represent indigent defendants in criminal matters is often inadequate, the duty to accept such appointment and to conduct such defense with the same diligence as if being paid privately is one resting on attorneys as members of a profession which has always been willing to provide protection for the rights of citizens. If both bench and bar approach this problem in that light, it is possible that a solution for this difficult problem can be found without either depriving indigent convicted persons of the right of review in meritorious cases or burdening the courts with reviews in cases which have no merit.

Remanded for further proceedings in accordance with this opinion.